WAYNE OIL, TANK & PUMP CO. *v.* AUTO REPAIR CO.

[97 South. 10. No. 22744.]

1. BANKRUPTCY. *Trustee vested with all potential powers of creditors on property of bankrupt.*

As to property acquired or used in the business of a bankrupt, under the 1910 amendment, clause 2, subsection (a) of section 47 of the Bankruptcy Act (U. S. Comp. St. Section 9631), the

trustee. in bankruptcy is vested with all the potential rights of a creditor holding liens upon such property by legal or equitable proceedings, which rights he may assert for the protection and benefit of the general creditors of the bankrupt, but when the liability to those creditors is discharged by composition, the lien so vested in the trustee is also discharged.

2. BANKRUPTCY. *On confirmation of composition of bankrupt, property revested only such as vested in trustee at date of adjudication.*

Under section 70 of the Bankruptcy Act (U. S. Comp. St. Section 9654), the trustee is vested by operation of law with the title of the bankrupt's property as of the date he was adjudged a bankrupt, and under paragraph (f) of said section 70 the title to such property revests in the bankrupt upon the confirmation of a composition offered by him, but on the confirmation of a composition there is revested in the bankrupt only such title as he had, and as became vested in the trustee at the date of the adjudication, and where the legal title of property is never vested in either the bankrupt or the trustee by the discharge of a purchase-money lien thereon, the title to the property is not revested in the bankrupt, freed from liability for the purchase price thereof.

APPEAL from circuit court of Covington county.
HON. W. H. HUGHES, Judge.

Action by the Wayne Oil, Tank & Pump Company against the Auto Repair Company. From a judgment for defendant, plaintiff appeals. Reversed and judgment rendered.

*G. H. Merrell* and *M. U. Mounger*, for appellants.

The appellee contends, that by virtue of the composition the title to the property was transferred to them and the court sustained them in this view. Under the Bankruptcy law, section 70 of "Upon the confirmation of a composition offered by a bankrupt," the title to his property shall thereupon revest in him.

Section 67d. of the bankrupt law provides that, "Lien given or accepted in good faith and not in contemplation of or fraud upon this act, and for a present consideration which has been recorded according to law, if

record thereof was necessary in order to impart notice, shall not be affected by this act.''

In this case the lien or reservation of title was taken in good faith and not in contemplation of·or fraud upon this act, and for a present consideration, that is, the sale and delivery of the property involved, hence it cannot be affected by the act of bankruptcy, unless the failure to record rendered it invalid as to creditors, but under the Mississippi law, as between the parties and those who stand in the place of the debtor it is not necessary to record. See *Laurel Oil & Fertilizer Co.* v. *Horn,* 58 So. 652.

The appellee contends that under the Mississippi sign statute the property was subject to the debts of the creditors, and therefore by the composition, the debtor obtained the right to the property but the answer to this is in the first place, whether it was subject or not to the debts of the creditors, there was no proceedings to so subject it. In the next place if the debtors are allowed to take this property by reason of the composition, the effect will be that the very people who owed the debt and gave the obligation and assume the same will be allowed to defeat it and profit thereby, by the simple .process of not complying with their contract and will be rewarded for failure to meet their agreement to the damage and injury of appellant, all of which appears to be unjust.

In the next place there is no proof in the record to show that appellant ever agreed that its property should be used in this particular business or that it had any knowledge of it. *Adams* v. *Berg,* 67 Miss. 234, 7 So. 225. Judge CAMPBELL held in the above case as follows: ''Section 1300 of the Code does not apply except where the thing sought to be treated as the property of him who transacted business with it was in·his possession, in such business, with the consent of the owner. One who puts his property in the possession of another, for use in his business, whereby that other is made to appear to be

132 Miss.—34

the owner, may justly be denied the right to assert his secret claim of ownership to such property as against a creditor of him who used it in his business, and that is the provision of the statute.''

The appellant sold the articles to E. H. Adams reserving title until they should be paid for. They might have been seized under execution against R. H. Adams, and held liable for his debts, by section 1300, but they could not be subject, by virtue of this section, for the debts of any person deriving title from him, and not having the consent of W. T. Adams, in whom the title was, to the arrangement. The evidence shows that Berg was a director of the R. H. Adams Manufacturing Co., and that the articles were purchased of the appellant by R. H. Adams individually, and it does not appear that the appellant had any dealings with the company, or any knowledge of its existence, which is matter of dispute. It would be a perversion of justice, as well as of section 1300 of the Code to permit a defeat of the right of the appellant by Berg.''

Again this section has no application in a contest between creditors. 68 Miss. 258, 8 So. 747. We submit that the sign, ''Auto Sales Co. Service Station'' was not a business sign at all or trader's sign, but was merely a sign to indicate that they were there for the purpose of serving the public in regard to the repair of automobiles and did not show that they were in business as traders, hence the sign statute should not affect this case.

It was never intended by the bankrupt law that the lien of a creditor not given in contemplation of bankruptcy, and taken in good faith should be affected by the bankrupt law. A sale for a present valuable consideration of personal property, made in good faith is perfectly good under the Mississippi law at any time before adjudication of bankruptcy without recordation. There is no law in Mississippi requiring one who re-

serves title to secure purchase money or personal property to record the same. (71 Miss. 42, 14 So. 259); but if such was the law in this state requiring such instruments to be recorded to affect the rights of general creditors, it could not avail the appellee in this case by reason of the fact that they are the parties to the lien contract sued on; they had full knowledge of this contract when they made the composition.

We therefore submit that the appellees are estopped and precluded by their acts and conduct from claiming this property, when they knew that other creditors would not have voted for the smaller offer of composition, if they had known that appellee intended to claim the property in question in this suit.

We submit that this case ought to be reversed and judgment entered in this court for appellants.

*Fulton Thompson* and *R. H. & J. H. Thompson,* for appellant.

If, as in this case, the adjudication decrees the firm or co-partnership alone to be a bankrupt, the discharge following it will be of the firm only; the individual partners will not be discharged from their personal liability for co-partnership debts. *Horner* v. *Hamner,* 249 Fed. 134; *Francis* v. *McNeal,* 229 U. S. 695.

The statement in Collier on Bankruptcy (12 Ed.), p. 180, in these words: ''If the adjudication is of the firm only the discharge following it will be a bar only to firm debts'' is too broad; it is not warranted by the authorities cited in its support so far as we have been able to examine them. Collier manifestly meant to say that the discharge alone of the firm will bar firm debts when sought to be enforced against the co-partnership. Suppose the firm and some other party are jointly and severally liable for a debt; surely the other party will not be discharged if there be an absence of every feature necessary to the application of the conception that

the discharge of one party necessarily discharges the other, as in the case perhaps in some cases of pure suretyship and guaranty. Collier's citations, in so far as we have been able to examine them, negative, his statements, unless it be restricted as above suggested.

That co-partners are jointly, severally and personally liable for the debts of the partnership is too well established to be controverted. They are primarily and not secondarily liable for the debts of the partnership; they are not sureties nor guarantors; their liability is not of such character as to bring it within the conception that the discharge from liability of some other person or legal entity is a discharge of their liability.

The plaintiff's contract was and is signed by the partnership name at the time of its execution (record p. 26) "Auto Sales Company" by W. U. Corley, M'gr. Commercial paper, contracts, etc., executed by a copartnership in its name impose personal, joint and several liability on each of the partners. This proposition is too well established to need the citation of authority in its maintenance.

If we be correct in the foregoing, our first contention in appellant's behalf, the judgment of the circuit court should be reversed, unless the bankruptcy discharge of the partnership alone discharged the liability of the partners, and discharged the plaintiff's lien on the property in suit securing the payment to plaintiff of its value, and, as well, that the return of the property under the composition to the bankrupt freed it from all liability to the plaintiff.

While the approved composition in the bankruptcy proceeding may have the effect of a discharge of the bankrupt, the partnership itself was the only party adjudged to be a bankrupt and the discharge was of it as a legal entity only. A party not adjudged a bankrupt cannot be reasonably claimed to have been discharged by virtue of bankruptcy proceedings. This is not all; the bankruptcy act itself expressly provides that in case

of an approved composition the property shall be returned to the bankrupt; it does not contemplate that it shall be freed of liens or charges upon it when so' returned. Of course, debts which are satisfied by the composition will no longer be a charge upon property so returned but if subject to a lien or charge when the bankruptcy proceedings were begun in favor of a person whose debt or other charge was not satisfied by the composition the lien or charge will not be released or satisfied by the return of the property to the bankrupt, The bankrupt has no power or right to defeat the lien or charge of a secured creditor by erroneously and falsely scheduling or listing him as an unsecured creditor, even if he be so scheduled or listed without evil intent.

The plaintiff received nothing under the composition; did not prove its claim, but rested contentedly upon its security as was its right.

The return of property to a bankrupt upon an approved composition did not affect the right of creditors having liens or charges upon it; it was re-acquired by the bankrupt upon its return, subject to all the rights of secured creditors existent at the time of the institution of the bankruptcy proceedings. Had property of the bankrupt, subject to liens or charges in favor of a third person been sold by the trustee in bankruptcy subject to existing liens, the sale would not have divested such liens or charges, but the purchaser from the trustee would have acquired the property subject to such liens or charges. Can it be that a return of property to a bankrupt upon composition invests him with greater rights than would have been acquired by a *bona-fide* purchaser at such a sale from the trustee in bankruptcy? In case of secret liens a purchaser at a trustee's sale would probably acquire the property freed of such liens, but the bankrupt upon return of the property to him would be charged with knowledge of such liens and would not have the rights of an innocent purchaser. If a sale by a trustee in bankruptcy be of property freed

of liens the liens are transferred to the proceeds, not extinguishable. Even, if it can be conceived that under ordinary circumstances a return of property to the bankrupt in pursuance of an approved composition gives him a perfect title, can it be claimed that he re-acquired the same, under the facts of this case, freed of liens and claims of secured creditors? It would be inequitable and unjust to apply the conception in this case, because of the undisputed facts that the composition was effected for a smaller sum of money than would have been offered had the referee not advised the bankruptcy letter; that the property sued for in this case, if returned to the bankrupt, would be subject to the plaintiff's rights under its contract of conditional sale.

*H. M. McIntosh*, for appellee.

Under section 3128 commonly known as the sign statute of Hemingway's Annotated Code of Mississippi, all property used and acquired in the business of Auto Sales Company became and was liable for his debts and in all respects treated in favor of his creditors as his property. Prior to 1910 the trustee in bankruptcy upon the adjudication and his appointment as trustee took the bankrupt property, or in other words, stepped into the bankrupt's shoes and only had such rights with reference to the bankrupt's property as had the bankrupt, but the amendatory Acts of 1910, as stated by Mr. Collier on Bankruptcy (12 Ed.), Volume 1, page 727, placed the trustee and vested in him the same rights as a creditor, holding a lien by legal proceedings, quoting fully from the text above mentioned:

"(2)    Amendatory Act of 1910—The Amendatory Act of 1910 amended subdivision 2 of subsection a, by providing in effect that the trustee should have the same title to property in the custody of the court that a creditor, holding an execution or other lien by legal or equit-

able proceedings levied against that property, would have under a state law.''

''(3)   Rule Existing Prior to Amendment—Prior to the amendment of 1910 the trustee was not clothed with the privileges of a judgment creditor.  The trustee title as against a claim under an unrecorded condition sale, though the state law require record, did not prevail. This rule still applies where property was acquired by the bankrupt on a conditional sale contract prior to the amendment.''

''(8)   Unrecorded Liens—In the latter part of this subsection, page 732, Mr. Collier says: ''A contract of conditional sale, void under the state law as against judgment creditors of the purchaser unless recorded, is likewise void as against the trustee in bankruptcy of the purchaser in possession of the property.''

In the case at bar, the property in question was in the custody of the court and under section 2 above referred to the trustee took the property the same as a creditor holding an execution and it would not be argued for one moment that the property in controversy would not be or would have been subjected for the payment of an execution creditor.  Whatever the holding of the courts might have been prior to 1910 with reference to the preservation of liens upon composition made in bankruptcy would not affect this case in view of the amendment of 1910 above referred to.  The district court of the state of Georgia in 28th American Bankrupt Report, page 535, in passing upon this question says: ''by virtue of the amendment of 1910 to this section a trustee in bankruptcy as respects property held by a bankrupt, under an unrecorded contract of conditional sale, is vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings and where property was delivered to bankrupt under a contract of conditional sale, nor recorded as required by the Georgia statute, the trustee's rights as to such property and the proceeds thereof are su-

perior to the conditional vendor." See, also, *Williamsburg Knitting Mills* v. ——, (D. C.), 27 Am. Br. —, 178, Fed. 871; *Hart v. Emerson Brantingham Co.* (D. C. Mo.), 30 Am. Br. 219, 203 Fed. 60.

It will be observed that this unrecorded reservation, title contract was as to the trustee void, not merely voidable; that the property was taken charge of by the trustee, was in the custody of the court and no proceeding was necessary by the trustee to obtain the same; that the trustee took this property the same as a sheriff with an execution and upon the confirmation of the composition and the payment of the amount offered and accepted, the appellee's respectfully contend that they thereby received a good and perfect title to the property and that the judgment of the lower court should be sustained.

Cook, J., delivered the opinion of the court.

This suit was an action of replevin in the circuit court of Covington county, wherein the appellant, Wayne Oil, Tank & Pump Company, was plaintiff, and the appellee, Auto Repair Company, was the defendant. The suit was instituted to recover possession of two oil tanks and pumps, which were described and valued in the declaration and affidavit upon which the action was based. At the conclusion of the testimony both parties requested peremptory instructions, and, the court having granted the peremptory instruction requested by the defendant, this appeal was prosecuted from the judgment entered in accordance therewith.

The facts as developed by the record are substantially as follows: On January 20, 1920, the appellant, a corporation of the state of Indiana, conditionally sold the property sued for, retaining title as security for its value, to the Auto Sales Company, a partnership of which Fred A. Lowrey, W. N. Corley, and O. S. Biglane were at that time the partners. Afterwards Fred A. Lowrey

and one Westbrook became the sole partners, and on April 21, 1921, the Auto Sales Company, the partnership, on the petition of creditors, was adjudged a bankrupt. The appellant was not one of the petitioning creditors, and it was erroneously scheduled as an unsecured creditor of the bankrupt. The partners were not adjudged bankrupts, and the appellant did not prove its debt or otherwise enter its appearance or take notice of the bankruptcy proceeding, but relied upon its security. On June 18, 1921, the bankrupt, the Auto Sales Company, offered a compromise to its unsecured creditors, and on June 28, 1921, the composition was accepted and approved, and the property was restored to the bankrupt. The two partners in the bankrupt partnership, Auto Sales Company, Lowrey and Westbrook, took possession of the property involved in this suit, formed a new partnership under the copartnership name of Auto Repair Company, the appellee, and, at the beginning of this suit, had the possession of the property in controversy. In addition to the above-stated facts, the appellant offered in evidence its written contract showing the conditional sale of the personalty sued for, the promise to pay plaintiff the value of the same, and otherwise made out its case. There was also testimony to the effect that the bankrupt's tentative offer of composition was reduced upon receiving advice from the referee in bankruptcy that the property would not be received by the bankrupt from the trustee in bankruptcy freed from appellant's lien, and there is no pretense that appellant has been paid for the property, or that it received anything on its debts by virtue of the composition.

In passing upon the correctness of the action of the court in granting a peremptory instruction in favor of defendant, it is important to consider the rights of a secured creditor in a proceeding in bankruptcy in reference to proving his claim.

Section 57, subsec. (e), of the Bankruptcy Act (U. S. Comp. St., section 9641), provides that the claims of secured creditors may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities, and subsection (h), after providing how the value of securities held by secured creditors shall be determined, then provides that the amount of such ascertained value shall be credited upon such claim, and a dividend shall be paid only on the unpaid balance.

In Collier on Bankruptcy (12 Ed. 1921), on pages 795 and 796, the author, in discussing section 57 of the Bankruptcy Act, says:

"Secured or priority creditors need not surrender their securities, but the value thereof may be determined and deducted, and dividends paid on the unpaid balances. . . . The act contemplates that secured creditors may and shall prove their claims, and they are to set forth the claim, the consideration therefor, and whether any, and, if so what securities are held therefor, etc. Claims of secured creditors and those having priority may also be allowed for certain purposes, thus, for the purpose of fixing the sum on which a dividend from the general estate is to be paid and also for limiting the voting power or voice of the secured creditor."

And also on pages 797 and 798 of the same volume, in discussing this question, Collier says:

"A secured creditor may or may not surrender his security, as he chooses. If he does, it inures to the benefit of all creditors, and his claim, if otherwise unobjectionable, is allowed at the full amount. If he does not, he can, it seems, have his claim allowed temporarily to enable him to participate in creditors' meetings prior to the determination of the value of his security, but

only for such sum as seems to be owing over the security. He may retain his security and prove for the amount of his claim after deducting, therefrom the value of his security. . . . If the security is equal in value to the claim, he cannot prove any part of his claim, although the creditor bids in the property at a foreclosure sale for less than his claim. A creditor cannot prove both a debt and the security thereof, but he may prove either one. He may rely on his security and enforce it according to his rights as they exist; in such a case it is optional with him to make a formal proof of his claim. If he does not present his claim and rely on the administration of the bankrupt estate, he is relegated to the property retained as security for the debt, and, so far as the estate is concerned, the debt is released. As has already been explained, the value of securities is often arrived at summarily at first meetings to permit a creditor to vote the unsecured balance. A claimant may, of course, be fully secured. If so, he should not be allowed to file a proof, and does not become a party to the proceeding. A creditor by proving an unsecured claim is not barred from proving the amount of a secured claim less the sum realized on the security."

In Loveland on Bankruptcy, vol. 1, p. 697, it is said that a secured creditor may rely upon his lien and neither prove his debt in bankruptcy nor release his security, and in such case the security is preserved, notwithstanding the bankruptcy of the debtor; or, the secured creditor may rely upon his security and prove for such sum as may be owing above the value of his security; or he may surrender his security and prove his debt as an unsecured creditor.

From the foregoing it appears that the appellant was clearly within its rights in relying on its security and declining to prove its claim, and unless the rights of the trustee in bankruptcy are superior to its rights under its unrecorded conditional sale contract, it can enforce its security. Having failed, however, to prove

its claim or the unsecured balance thereof, the debtor would be discharged from all liability for his deficit, upon the approval of a composition in the bankruptcy proceedings.

The next question that arises is, What were the rights of the trustee in bankruptcy in the property covered by appellants unrecorded contract of conditional sale? It is the contention of appellee that the bankrupt, Auto Sales Company, was a trader within the meaning of section 4784, Code of 1906 (section 3128, Hemingway's Code), commonly known as the sign statute, and that, since it failed to comply with the requirements of this statute, this property, which was used in its business, would, as to the creditors of the bankrupt, be liable for its debts, and be in all respects treated in favor of its creditors as its property. For the purposes of this decision only it may be conceded that this statute applies since under the 1910 amendment of the Bankruptcy Act, clause 2, subsec. (a) of section 47 (U. S. Comp. St., section 9631), the "trustees, as to all the property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon."

In Collier on Bankruptcy (12 Ed.), vol. 1, pp. 728—730, in discussing this amendment it is said:

"The purpose of the amendment was to give to the trustee the lien of a judgment creditor, enabling him to protect general creditors from unrecorded liens, unlawful transfers, spurious claims and other dissipations of the assets of the estate, which a lien or judgment creditor might have prevented had bankruptcy not intervened. . . . Under the amendment the trustee may attack the validity of any lien, or other claim against the bankrupt's property which a creditor holding a lien by legal or equitable proceedings might have attacked. Under this provision of the statute the trustee is not limited to such objections to a transaction between the

bankrupt and a creditor as the bankrupt might have had, but he may make any objection that a creditor holding a lien might make. . . . The amendment vests in the trustee, by operation of law, a lien equivalent in all respects to that acquired upon the property coming into the custody of the trustee, by virtue of legal or equitable proceedings instituted against the bankrupt by a creditor. This provision of the Bankruptcy Act puts the trustee, in so far as the assets of the estate are concerned, in the position of a lien creditor, but does not necessarily give him the *status* of a purchaser without notice.''

From the foregoing it appears that the trustee in bankruptcy was vested with a lien on the property here in controversy, which was equivalent to that of a judgment creditor and was superior to the lien of the unrecorded conditional contract of sale. The trustee was vested with all the potential rights of a creditor holding liens upon the property by legal or equitable proceedings, which rights he could assert for the protection and benefit of the general creditors, but when the liability of the bankrupt to these creditors was discharged by the composition, the lien so vested in the trustee was also discharged. Under section 70 of the Bankruptcy Act (U. S. Comp. St. section 9654) the trustee was vested by operation of law with the title of the bankrupt's property as of the date he was adjudged a bankrupt, and under paragraph (f) of said section 70, the title to such property revested in the bankrupt upon the confirmation of the composition offered by him. Under the contract of conditional sale by which the title of the property here in controversy was reserved in the seller until the full payment of the purchase price thereof, the legal title of the property was not vested in the bankrupt at the date he was adjudged a bankrupt, and the title did not vest in the trustee. Upon the confirmation of the composition there was revested in the bankrupt

only such title as he had, and as became vested in the trustee, at the date of the adjudication, and, since the legal title of this property was never vested in either the bankrupt or the trustee, by the discharge of the purchase-money lien to the extent of the value of such security, the title to the property did not revest in the bankrupt, freed from liability for the purchase price thereof.

We conclude, therefore, that the peremptory instruction requested by the appellant should have been granted.

*Reversed, and judgment here for appellant.*